# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## GREAT FALLS DIVISION

| | |
|---|---|
| MARK PERSON, ROBERT DORAN, SHELLY VERNON, ROBERT VERNON, TERRANCE BUCHANAN, SCOTT TINKLENBERG, GARY GUNDERSON, and VAUGHN VOLUNTEER FIRE DEPARTMENT, INC., | **CV-21-93-GF-BMM** |
| Plaintiffs, | **ORDER** |
| vs. | |
| TANNERITE SPORTS LLC; DANIEL J. TANNER, individually and acting under the assumed business name TANNERITE EXPLOSIVES; and DOES 1-50, | |
| Defendants. | |

## INTRODUCTION

Plaintiffs Mark Person, Robert Doran, Shelly Vernon, Robert Vernon, Terrance Buchanan, Scott Tinklenberg, Gary Gunderson, and Vaughn Volunteer Fire Department, Inc., (collectively, "Plaintiffs"), allege claims for Defective Design (Count I), Manufacturing Defect (Count II), Failure to Warn (Count III), Warranty (Count IV), and Punitive Damages (Count V) against Defendants Tannerite Sports LLC and Daniel Tanner ("Tanner"), individually and acting on

behalf of Tannerite Explosives (collectively, "Defendants"). *See* (Doc. 1).
Defendants have filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6).
(Doc. 5). Daniel Tanner further moves this Court in his individual capacity to
dismiss the allegations against him pursuant to Fed. R. Civ. P. 12(b)(2). *Id.*
Plaintiffs oppose the Motion. The Court held a hearing on the matter on December
16, 2021.

## BACKGROUND

Plaintiffs allege that Defendants "design, manufacture, assemble, market,
advertise, supply, distribute, and/or sell binary exploding targets" known as
"Tannerite Brand Binary Exploding Targets," ("exploding targets"). (Doc. 1 at ¶
10). The product consists of two ingredients: ammonium nitrate and aluminum
powder. *Id.* at ¶ 11. Defendants package the two ingredients separately and provide
instructions to users on how to mix the products to prepare the exploding target. *Id.*
at ¶ 13. The user then pours the mixture into a "target container." *Id.* When shot
with a firearm, this "target container" detonates at a rate between 16,000 and
18,000 feet per second. *Id.* at ¶¶ 13-14.

Plaintiffs bring this action after an incident involving the use of Tannerite's
product on September 2, 2019. (Doc. 1 at ¶ 9). Three men allegedly using
Tannerite's product for target shooting in Cascade County started a fire upon the
explosion of one of the targets. *Id.* at ¶ 20. The fire spread over approximately

2

16,000 acres. *Id.* at ¶ 21. The fire destroyed Plaintiffs' "crops, pastures, fencing, a residence, multiple out buildings" and caused damage to Plaintiffs' property. *Id.* Plaintiffs claim that Tannerite markets their exploding targets as safe and non-flammable. *Id.* at ¶ 23. Plaintiffs allege Tannerite's marketing knowingly misleads customers about the product's ability to start a fire. *Id.* at ¶¶ 23-24.

Defendants now move this court to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim on the basis that none of the Plaintiffs qualify as "users" or "consumers" of the product for purposes of Montana's state liability statute, codified at Mont. Code Ann. § 27-1-719. Further, Defendant Daniel Tanner moves for dismissal under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction because Plaintiff's complaint fails to establish that Tanner has sufficient minimum contacts with the jurisdiction.

## ANALYSIS

### I.   Defendant's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6)

The Court analyzes first the alleged failure to state a claim.

#### a.  Legal Standard

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of a complaint under the plausibility pleading standard of Rule 8(a)(2). *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal proves appropriate under Rule 12(b)(6) where the complaint fails to state

a claim upon which relief can be granted. *Mendiondo v. Centinela Hospital Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). A court may dismiss a complaint "based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

The Court will accept the plaintiff's allegations "as true" and "construe them in light most favorable to plaintiffs" when deciding a motion to dismiss. *Kopeikin v. Moonlight Basin Management, LLC*, 981 F. Supp. 2d 936, 939 (D. Mont. 2013) (citations omitted). The complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that would be plausible on its face to survive a Rule 12(b)(6) motion. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009). A claim remains plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. The plausibility standard does not require probability, but "asks for more than sheer possibility that defendant has acted unlawfully." *Id.* A court sitting in diversity jurisdiction applies the substantive law of the forum state." *Her Majesty Queen in Right of Province of British Columbia v. Gilbertson*, 597 F.2d 1161, 1163 (9th Cir. 1979).

4

### b.  Strict Liability Claims (Counts I, II, and III)

Plaintiffs allege in their Complaint that Defendants stand strictly liable for defectively designing and manufacturing the product, and for failing to warn of the product's defective condition. (Doc. 1 at ¶¶ 27-39). Montana has adopted the theory of strict product liability from Restatement (Second) of Torts § 402A in Mont. Code Ann. § 27-1-719(2). *Patch v. Hillerich & Bradsby Co.*, 257 P.3d 383, 387 (Mont. 2011). The statute provides that one who "sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer" or to the user's or consumer's property. *Id.*; Mont. Code Ann. § 27-1-719(2); Restatement (Second) of Torts, § 402A (1965).

For a strict products liability claim, the plaintiff must establish the following factors: "(1) the product was in defective condition 'unreasonably' dangerous to the user or consumer; (2) the defect caused the accident and the injuries complained of; and (3) the defect is traceable to defendant." *Kuiper v. Goodyear Tire & Rubber Co.*, 673 P.2d 1208, 1221 (Mont. 1983). For a failure to warn claim, a plaintiff must establish the following elements: "(1) the product was sold in a defective condition due to the lack of or an inadequate warning, (2) the defect caused the injury [to the user or consumer], and (3) the defect is traceable to the defendant." *Patch*, 257 P.3d at 389 (*citing Wood v. Old Trapper Taxi*, 952 P.2d

1375, 1382 (1997)). Accordingly, only a "user" or "consumer" of the allegedly defective product has standing to bring a strict product liability claim. *City of Seattle v. Monsanto Company*, 237 F.Supp.3d 1096, 1108 (W.D. Wash 2017).

### "Users" or "Consumers."

Defendants argue that the Court should dismiss Plaintiffs' strict product liability claims as Plaintiffs fail to allege that they were "users" or "consumers" of the exploding targets. Defendants rely heavily on the reasoning in *City of Seattle*. The City of Seattle alleged that Monsanto Company contaminated the city water supply with toxic chemicals known to cause health problems. *Id.* at 1100. The City of Seattle sought to force Monsanto to bear the cost of the cleanup. *Id.* Monsanto marketed these toxic chemicals to manufacturers and consumers who ultimately discharged the toxic chemicals. *Id.* at 1101. The City of Seattle alleged that these toxic chemicals eventually migrated into the city water system. *Id.*

The City of Seattle brought strict product liability claims for defective design and failure to warn. *Id.* at 1101. Monsanto Company moved to dismiss the complaint. *Id.* at 1101-02. The district court determined that the City of Seattle lacked standing to bring a products liability claim because the City of Seattle had failed to allege that it qualified as a "user" or "consumer" of the allegedly defective product. *Id.* at 1108. The district court also determined that the City of Seattle could not foreseeably have been seen as a bystander for purposes of extending

6

Monsanto Company's liability to members of a user's or consumer's household. *Id.*

The Montana Supreme Court also has provided guidance on the scope of liability for "users" and "consumers" in *Patch*, 257 P.3d 383. A baseball pitcher, Brandon Patch, was killed after he was struck in the head by batted ball in a baseball game. *Id.* at 386. Patch's parents brought product liability claims against the manufacturer of the aluminum bat. *Id.* The manufacturer argued that only the individual batter and the purchaser of the bat could assert failure to warn claims. *Id.* at 387.

The Montana Supreme Court analyzed whether Brandon qualified as a "user" or "consumer" to impose strict products liability upon the manufacturer under the Restatement (Second) of Torts § 402A. *Id.* at 387-389. The Montana Supreme Court acknowledged the broad definitions of "user" and "consumer" under § 402A and determined that the manufacturer's interpretation of the terms proved too narrow. *Id.* at 387. In doing so, the Montana Supreme Court concluded that all players in the baseball game qualified as "users and consumers placed at risk by the increased exit speed" caused by the manufacturer's aluminum bat. *Id.* at 388. The Montana Supreme Court recognized that the bat represented an "indispensable part of the game," that the bat's risk of harm extended beyond the

7

batter, and that a warning only to the batter "inadequately communicates the potential risk of harm by the bat's increased exit speed." *Id.*

*City of Seattle* and *Patch* prove instructive here. Like in *City of Seattle*, Plaintiffs fail to allege in their Complaint that they were "users" or "consumers" of the exploding targets. (Doc. 1). The district court refused to impose strict liability on Monsanto Company even when the City of Seattle argued that the downstream effects of the contaminated water rendered it a foreseeable bystander similar to a member of a consumer's household. *City of Seattle*, 237 F.Supp.3d at 1108. Plaintiffs have not alleged that they used the exploding targets. Plaintiffs allege instead that they have been affected by the users' actions in exploding the targets. Plaintiffs' alleged contact with the exploding targets comes solely from the impact caused by the unrelated third-party shooters' use of the exploding targets. Furthermore, although *Patch* illustrates that Plaintiffs need not have purchased or used the product to have standing to bring strict products liability claims, Plaintiffs still fall short of *Patch*'s broad definition of "user" and "consumer." 257 P.3d at 387-88.

*Patch* extended the scope of "user" and "consumer" to all players in the baseball game due to the bat's designation as an "indispensable part of the game." *Id.* at 388. The Montana Supreme Court connected the aluminum bat's essential use to the risk that it posed to all the players in the game. *Id.* A connection similar

8

to *Patch* fails to exist in this case. *Id.* at 388. In fact, no connection appears to exist between the shooters of the exploding targets and the Plaintiffs. In order for the logic in *Patch* to apply here, Plaintiffs would have had to demonstrate participation in the shooting to some capacity that would have placed them at risk of harm caused by the exploding targets. No such allegations have been made. Montana law prevents this Court from designating Plaintiffs as "users" or "consumers" for purposes of strict products liability even under the broad definition set forth in *Patch*. *Id.* at 387-88.

### Extension of liability beyond "users" and "consumers."

Plaintiffs claim that Montana grounded its adoption of the Restatement (Second) of Torts § 402A in the public policy to hold manufactures accountable for defective products and failing to warn of product dangers. *Brandenburger v. Toyota Motor Sales*, *U.S.A., Inc.*, 513 P.2d 268, 272 (Mont. 1973). The public policy reasons admittedly provide perspective on Montana's adoption of § 402A. The current Montana law remains clear, however, that only users and consumers of a product retain standing to bring claims for strict products liability. The public policy behind the adoption fails to persuade the Court that Plaintiffs were "users" or "consumers" of the exploding targets even if the broader extent adopted in *Patch* applied.

9

Plaintiffs argue that *Streich v. Hilton-Davis*, 692 P.2d 440 (Mont. 1984), demonstrates the Montana Supreme Court's willingness to employ public policy reasons to hold a manufacturer liable under strict products liability to non-purchasers or non-users of the product. The plaintiff was a potato farmer who had purchased and used a chemical from Hilton-Davis to grow seed potatoes. *Id.* at 442. Streich sold seed potato to third-party farmers. *Id.*

Streich and the third-party farmers, who used the seed potatoes contaminated with the chemical, developed problems with their potato crops. *Id.* The Montana Supreme Court concluded that the third-party farmers, who used Streich's seed potatoes, fell into the scope of strict products liability even though they had not used or purchased the chemical. *Id.* at 445. Strict liability applies when "the *use* of a product for the purpose for which it was intended has the foreseeable potential of damaging the *user's* property." *Id.* (emphasis added).

Even when leaning on public policy arguments, *Streich* demonstrates that the Montana Supreme Courts has extended strict liability only when plaintiffs were *users* of the product, even downstream users. The third-party farmers in *Streich* had not actually used the chemical, but had used the seed potatoes that had been contaminated with the chemical. *Id.* at 442. No such connection exists in this case. Plaintiffs have failed to allege that they have used the exploding targets in any manner.

10

Plaintiffs retain no connection to the shooters' purchase of the exploding targets and have not enjoyed the benefit of using the targets. In other words, Plaintiffs present no connection between the purchase of the exploding targets and any downstream, indirect use of the exploding targets. Without such a connection, Plaintiffs would be classified as mere bystanders. Foreseeable potential of damage alone fails to impose strict liability on Defendants absent Plaintiffs' alleged use of the exploding targets in some manner under existing Montana law.

**Extension of liability for injury to bystanders.**

Plaintiffs here stand in a position similar to the plaintiffs in *Bell v. Glock*, 92 F. Supp.2d 1067 (D. Mont. 2000). Two teenage boys entered the bedroom of one of the boy's stepfathers to look for sleeping bags for a camping trip. *Id.* at 1068. The stepson saw a gun in a holster hanging from the bedpost. *Id.* The stepson grabbed the gun, pointed it at his friend and pulled the trigger. *Id.* The stepson did not think that the gun was loaded and only wanted to hear a click. *Id.* The stepson instead shot his friend in the face and killed him. *Id.* The decedent's parents brought a strict liability claim against the gun manufacturer. *Id.* The district court rejecgted the gun manufacturer's assumption of the risk defense on the grounds that the decedent – the victim of the gunshot – was not a "user" or "consumer" of the product. *Id.* at 1071. Plaintiffs here were not "users" or "consumers." Like the

decedent in *Bell*, Plaintiffs appear to have been victims of an allegedly dangerous product.

The Montana Supreme Court has not yet determined, however, whether strict products liability extends to bystanders. A federal court sitting in diversity must apply the substantive law of the forum state. *Her Majesty Queen in Right of Province of British Columbia*, 597 F.2d at 1163. When an issue of state law arises that has not been adjudicated by the state's highest court, a federal court sitting in diversity jurisdiction "must make a reasonable determination of the result the highest state court would reach if it were deciding the case." *Pacific Hide & Fur Depot v. Great American Ins. Co.*, 23 F. Supp. 3d 1208, 1212 (D. Mont. 2014) (citations omitted). The court "must look to existing state law without predicting potential changes in that law." *Id.* The court should look to decisions from other jurisdictions as guidance. *Id.*; *Kairy v. SuperShuttle Intern.*, 660 F.3d 1146, 1150 (9th Cir. 2011).

All states that have adopted the theory of strict liability have "extended the theory to the bystander when called upon to do so." *Caruth v. Mariani*, 463 P.2d 83, 85 (Ariz. Ct. App. 1970); *see also Elmore v. American Motors Corp.,* 451 P.2d 84 (Cal. 1969), *Osborne v. International Harvester Co.*, 688 P.2d 390 (Or. App. 1984). In *Elmore*, the California Supreme Court reasoned that, "[i]f anything, bystanders should be entitled to greater protection than the consumer or user where

injury to bystanders from the defect is reasonably foreseeable." 451 P.2d at 89.

As noted, "[c]onsumers and users, at least, have the opportunity to inspect for

defects and to limit their purchases to articles manufactured by reputable

manufacturers and sold by reputable retailers, whereas the bystander ordinarily has

no such opportunities." *Id.* The California Supreme Court concluded that "the

bystander is in greater need of protection from defective products which are

dangerous, and if any distinction should be made between bystanders and users, it

should be made, contrary to the position of defendants, to extend greater liability in

favor of the bystanders." *Id.*

The Arizona court in *Caruth* took a similar position in extending liability.

463 P.2d 83. The court offered a hypothetical in which an owner of a vehicle loans

the vehicle to his neighbor. *Id.* at 86. As the neighbor drives the vehicle, the

vehicle suffers from a defective steering malfunction due to no fault of the owner

or neighbor. *Id.* The vehicle strikes and paralyzes a pedestrian. *Id.* The vehicle then

hits a wall, leaving the neighbor with minor cuts. *Id.* In a jurisdiction that refuses to

extend liability to bystanders' injuries, only the neighbor, as a "user" or

"consumer," can recover against the manufacturer. *Id.* That same jurisdiction

leaves the paralyzed pedestrian without recourse. *Id.*

Plaintiffs' case here mirrors the court's hypothetical in *Caruth*. Current

Montana law would leave Plaintiffs without recourse against Defendants because

13

Plaintiffs fall outside the expanded definitions of "user" and "consumer" recognized in *Patch.* As explained in *Caruth*, however, the tort concept based in public policy exists to protect "injured persons" and not just "users and consumers." *Id.* The Court cannot rationalize a result in this case that would leave an innocent bystander without recourse similar to the hypothetical in *Caruth*.

The Court believes that the Montana Supreme Court, if confronted with the question, would adopt bystander liability for the purposes of strict products liability. *Patch* and *Streich* demonstrate the Montana Supreme Court's willingness to extend the definition of "user" or "consumer." Although Plaintiffs in this case could not be considered "users" or "consumers" under the logic of *Patch* and *Streich*, the Montana Supreme Court nonetheless has demonstrated a willingness to extend the scope of liability when called upon to do so. This willingness indicates that the Montana Supreme Court would extend liability to protect bystanders in "greater need of protection." *Elmore*, 451 P.2d at 89.

The damage to Plaintiffs' property cannot be said to fall outside the scope of reasonable foreseeability. The use of such "non-flammable" exploding targets, if defective, has the potential of great destruction. (Doc. 1 at ¶ 16). Plaintiffs, as mere bystanders, never had the luxury of inspecting the exploding targets for defects before the third-party shooters engaged in target practice. Plaintiffs instead were left with damaged property stemming from a third-party's use of the allegedly

14

defective exploding targets. "Innocent victims should not be required to bear the burden of injuries caused by defective products." *Osborne*, 688 P.2d at 397. Furthermore, other states that also employ the Restatement (Second) of Torts have adopted bystander liability. *See Osborne*, 688 P.2d 390; *Caruth*, 463 P.2d 83; *Elmore*, 451 P.2d 84. Using decisions from those neighboring jurisdictions and existing Montana law, the Court reasonably can determine that the Montana Supreme Court would adopt liability in favor of bystanders. Accordingly, it remains plausible that Plaintiffs' injuries exist within the range of danger that liability for injuries to bystanders serves to protect.

### c.  Breach of Warranty Claim (Count IV)

Plaintiffs allege in their Complaint that Defendants stand liable for breach of warranty. (Doc. 1 at ¶¶ 40-43). Plaintiffs claim that Defendants knew "users" of the exploding targets "would rely on Tannerite to provide safe products" and that the exploding target would be "suitable for its intended purposes and would not cause a fire." *Id.* at ¶ 41. Plaintiffs plead their warranty claim on the basis of strict liability. (Doc. 11 at 20-21). Warranty claims based on strict liability differ from warranty claims based in contract. Restatement (Second) of Torts § 402A cmt. m.

Montana no longer requires privity for breach of implied warranty claims. *Streich*, 692 P.2d at 448. In fact, strict liability applies even if "the user or consumer did not buy the product from or enter into any contractual relation with

15

the seller." Mont. Code. Ann. § 27-1-719(3)(b). It has already been determined that Plaintiffs have failed to allege and meet the broad definitions of "users" and "consumers" under Montana law for purposes of strict products liability. The Court has declined to dismiss Plaintiffs' strict products liability claims, however, because the Montana Supreme Court has not yet determined whether strict liability applies to bystanders. Because Plaintiffs' plead their breach of warranty claim on the basis of strict liability, the claim survives.

### d. Punitive Damages (Count V)

Punitive damages exist as "merely a component of recovery of the underlying civil cause of action." *Finstad v. W.R. Grace & Co.*, 8 P.3d 778, 782 (Mont. 2000) (citation omitted). The Court has declined to dismiss Plaintiffs' claims for strict products liability and breach of warranty. Accordingly, Plaintiffs' derivative claim for punitive damages survives.

## II.   Defendant's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(2)

The Court analyzes second the alleged lack of personal jurisdiction.

### a. Legal Standard

Plaintiffs bear the burden of proving that personal jurisdiction exists. *Freestream Aircraft (Bermuda) Ltd. v. Aero Law Group*, 905 F.3d 597, 602 (9th Cir. 2018) (citation omitted). The Court must construe the complaint "in the light most favorable to the plaintiff" when analyzing a motion to dismiss for lack of

16

personal jurisdiction. *Milky Whey, Inc. v. Dairy Partners, LLC*, 342 P.3d 13, 15 (Mont. 2015) (*quoting Grizzly Sec. Armored Express, Inc. v. Armored Grp., LLC,* 2011 MT 128, ¶ 12, 360 Mont. 517, 255 P.3d 143 (Mont. 2011). The Court must accept as true the allegations in the complaint. *Buckles by and through Buckles v. Continental Resources, Inc.*, 402 P.3d 1213, 1216 (Mont. 2017).

Personal jurisdiction may exist in either a general or specific sense. *Ford Motor Company v. Montana Eighth Judicial District Court*, 443 P.3d 407, 412 (Mont. 2019). General personal jurisdiction is based upon "the defendant's relationship with the forum state." *Id.* Specific jurisdiction, on the other hand, is based upon "the defendant's relationship to both the forum state and the particular cause of action." *Id.* (citation omitted). Two requirements must be met for personal jurisdiction to be proper: (1) personal jurisdiction exists under Montana's long-arm statute; and (2) the exercise of personal jurisdiction must not infringe on a defendant's due process rights. *Id.*

**b. Whether personal jurisdiction exists over Defendant Daniel Tanner.**

Defendants assert that the Court lacks personal jurisdiction over Daniel Tanner as an individual. As an initial matter, the Court notes that general personal jurisdiction has not been alleged by Plaintiffs, and would not provide jurisdiction over Tanner. No evidence has been presented to show that Tanner was found within the state of Montana or that his activities have been so "systematic and

continuous" as to establish general personal jurisdiction. *Milky Whey*, 342 P.3d at 17.

The Court must first analyze whether specific personal jurisdiction exists under the Montana long-arm statute. Any person subjects themselves to jurisdiction in Montana as to any claim for relief arising from "the transaction of any business within Montana" or "the commission of any act resulting in accrual within Montana of a tort action." Mont. R. Civ. P. 4(b)(1)(A)-(B). Tanner insists that Plaintiffs failed to allege that Tanner transacted business in or acted or caused a tort to occur in Montana. Based on the allegations in the Complaint (Doc. 1), however, it appears that the exercise of personal jurisdiction over Tanner proves proper. The users purchased the exploding targets Montana. The elements of the tort accrued in Montana. Plaintiffs have alleged that the explosion of Defendants' target caused a fire that resulted in damage to their property. (Doc. 1 at ¶¶ 9-26).

Next, the Court must determine whether the exercise of personal jurisdiction over Tanner comports with due process. Courts apply the following three-prong test to determine whether at the exercise of personal jurisdiction would comport with due process: "(1) the nonresident defendant purposefully availed itself of the privilege of conducting activities in Montana, thereby invoking Montana's laws; (2) the plaintiff's claim arises out of or relates to the defendant's forum-related activities; and (3) the exercise of personal jurisdiction is reasonable."

Tanner purposefully availed himself of Montana. "A nonresident defendant purposefully avails itself of the benefits and protections of the laws of the forum state when it takes voluntary action designed to have an effect in the forum." *B.T. Metal Works and Daryl Boyd, D.B.A. v. United Die and Manufacturing Co.*, 100 P.3d 127, 134 (Mont. 2004). Purposeful availment to the forum fails to exist when a defendant's only contacts are "random, fortuitous, attenuated, or due to the unilateral activity of a third party." *Id.*

Plaintiffs have alleged that Tanner operates under the assumed business name "Tannerite Explosives." (Doc. 1 at ¶ 4). Plaintiffs further allege that Tanner is the "manager, owner, and Principal of Tannerite Sports, LLC, and engaged in, controlled, directed, authorized, and/or ratified the conduct of Tannerite Sports, LLC, and Tannerite Explosives." *Id.* Notably, Plaintiffs allege that Defendants have collectively marketed, advertised, sold and distributed the exploding targets in Montana. *Id.* at ¶ 8. Taking the factual allegations in the Complaint as true and in a light most favorable to Plaintiffs, Tanner, in his individual capacity, voluntarily has taken action to sell his products in Montana. Tanner's contacts with Montana cannot be said to be "random" or "attenuated." Plaintiffs satisfy the first prong.

Second, the claims arise out of Tanner's forum-related activities. The case centers around Tanner's and his companies' sales of the exploding targets to

Montana customers and the damage it caused to Montana residents. Plaintiffs have alleged that Defendants collectively have marketed, sold, advertised, and distributed the exploding targets in Montana. A connection exists between Tanner's sales of the exploding targets and the Plaintiffs' claims. *Ford Motor Company*, 443 P.3d at 415. Plaintiffs satisfy the second prong.

Third, the exercise of personal jurisdiction over Tanner proves reasonable. Once the first element is satisfied, "a presumption of reasonableness arises, which the defendant can overcome only by presenting a compelling case that jurisdiction would be unreasonable." *Ford Motor Company*, 443 P.3d at 413. Defendants have failed to present a compelling case to overcome the presumption. Plaintiffs satisfy the third prong. Accordingly, this Court may exercise personal jurisdiction over Tanner.

## ORDER

Accordingly, **IT IS ORDERED** that the motion (Doc. 5) is **DENIED**.

Dated the 6th day of May, 2022.


_____
Brian Morris, Chief District Judge
United States District Court

20